950 P.2d 701

**In the Interest of John DOE, Born on November 21, 1972, Juvenile–Appellant.**

**No. 18140.**

Intermediate Court of Appeals of Hawai'i.

Dec. 10, 1997.

**518**

Toby M. Tonaki, Deputy Public Defender, on the briefs, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Judge.

Pursuant to Hawai'i Revised Statutes (HRS) § 571–54 (1993), John Doe, born on November 21, 1972(Doe), appeals the family court's May 11, 1994 Order Re Motion denying his May 2, 1994 Motion for Reconsideration of Orders. The order Doe challenges is the part of the family court's April 13, 1994 Findings, Order and Decree that ordered Doe to be committed to the care of the Executive Director of the Department of Public Safety for thirty days with credit of fourteen days for time served. We vacate the challenged part of the April 13, 1994 Findings, Order and Decree and remand.

1. The petition stated that Negligent Homicide in the First Degree was proscribed by Hawai'i Revised Statutes (HRS) § 707–703 (1993). In fact, it is proscribed by HRS § 707–702.5 (1993). Act 292, Session Laws 1988, added § 707–702.5 to redefine Negligent Homicide in the First Degree. The legislature felt that stronger measures were needed to protect the public and to deter those who negligently operate a motor vehicle while under the influence of alcohol or drugs, which results in bodily injury or death to others. § 707–702.5 states:

Negligent homicide in the first degree. (1) A person is guilty of the offense of negligent

## BACKGROUND

The facts are not in dispute. A May 22, 1991 Petition filed by the State of Hawai'i (the State) alleged that on April 17, 1990 Doe committed the offense of Burglary in the First Degree (Burglary First), HRS § 708–810(1)(c) (1993). On June 18, 1991, the State filed three Petitions against Doe pertaining to a traffic accident on August 26, 1990, involving the death of a passenger in the car Doe was driving. The first Petition alleged Driving Under the Influence of Intoxicating Liquor (DUI), HRS § 291–4(a)(2) (1993). The second Petition alleged Driving Without License (DWOL), HRS § 286–102 (1993). The third Petition alleged Negligent Homicide in the First Degree (Negligent Homicide), HRS § 707–703 (1993) [1].

Arraignment and plea were scheduled in the family court on June 5, 1991, but Doe did not appear. Doe again failed to appear at a rescheduled arraignment and plea on July 12, 1991, and on August 28, 1991 two summons were issued: one for the appearance of Doe and one for the appearance of his mother. Both summons were returned unserved on October 1, 1992. An investigator from the prosecutor's office met with Doe's mother on November 10, 1992 and was informed by her that Doe had moved to California, that his address was unknown, and that she had no contact with him. After a computer check revealed that Doe had been arrested in California, extradition procedures were begun on December 30, 1992. Doe was located in Colorado in February 1993, and on August 18, 1993 a bench warrant was executed.[2] Doe executed a waiver of extradition to Hawai'i on August 27, 1993.

homicide in the first degree if that person causes the death of another person by the operation of a vehicle in a negligent manner while under the influence of drugs or alcohol.
(2) Negligent homicide in the first degree is a class B felony.

2. The record is unclear as to why Ex Parte Motions for Bench Warrant were submitted by the State to the family court on February 24, 1993 and March 2, 1993 and returned unfiled by the clerk and also why another Ex Parte Motion was filed on April 19, 1993 but the warrant was not issued until July 26, 1993.

On August 23, 1993, the State moved to *nolle prosequi* the DUI and DWOL charges and petitioned the family court to waive its jurisdiction with respect to the Burglary First and the Negligent Homicide charges. The court granted the State's motion with regard to the DUI and DWOL charges and set the petition for waiver for hearing.

After a November 9, 1993 hearing, the family court, on April 13, 1994, entered an order denying the State's petitions for waiver of jurisdiction. In its findings and conclusions the court stated that "public safety does not require that [Doe] continue under judicial restraint by the adult court[,]" that the court "does find inexcusable prosecutorial delay in this case[,]" and that "[t]he court has to weigh prosecutorial delay and the tragedy of a life wasted. The results are even. Since the S[t]ate has the burden of proof, the State loses."

On April 13, 1994, pursuant to an agreement with the State, Doe pled no contest to the Negligent Homicide charge in exchange for the State moving to *nolle prosequi* the Burglary First charge. The court granted the State's motion and accepted Doe's plea. Both Doe and the State agreed to the following as part of the plea agreement.

[DEPUTY PROSECUTOR]: That's correct, your Honor.

The State and the defense have agreed to the following:

That [Doe] would be given fourteen days of detention. Time—we would be crediting him for time served during the period that he was held for extradition [in] Colorado and in [Hawai'i].

The family court's April 13, 1994 Findings, Order and Decree and Order Re Motions (1) permitted the withdrawal of Doe's Motion to Dismiss Petition for Pre–Petition and Pre–Trial Delay and Violation of Speedy Trial, (2) granted the State's motion to *nolle prosequi* the Petition alleging Burglary First and dismissed the Petition with prejudice, and (3) accepted Doe's *nollo contendre* plea to Negligent Homicide and on that basis adjudicated that Doe was a law violator.

Doe was 17 years old at the time of the alleged offenses. However, since Doe was 19 years old when the Petition was filed and 21 years old during the adjudication and disposition phases of his case, the family court was not authorized to commit him to the care of the Executive Director of the Office of Youth Services. Instead, the family court's April 13, 1994 Findings, Order and Decree committed Doe to the care of the Executive Director of the Department of Public Safety, *i.e.* to an adult correctional facility, for thirty days with fourteen days credit for time served. It also required Doe to attend a victim impact session at least once before leaving this jurisdiction and to compose a one-page typed letter of apology.

The family court stayed the issuance of the mittimus until 6:00 p.m. on Friday, April 15, 1994. On April 15, 1994, the Hawai'i Supreme Court entered its order staying the mittimus against Doe until further order.

Doe's May 2, 1994 motion for reconsideration of the sentence was denied by the family court on May 11, 1994. Doe's timely appeal pursuant to HRS § 571–54 (1993) followed.

### ISSUE AND STANDARD OF REVIEW

■ The issue is whether the family court is authorized to commit a person who was under age 18 when the offense was committed, but who is age 21 at the time of the adjudication and disposition phases of the case, to time in an adult correctional facility. This issue is a question of law. Questions of law are reviewed *de novo*, under the right/wrong standard. *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

### DISCUSSION

The family court's jurisdiction in this case is governed by HRS § 571–11 (1993), which states in pertinent part:

**Jurisdiction; children.** Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance[.]

■ Doe was born on November 21, 1972, and the acts which he is alleged to have committed, which would have constituted violations of state law, occurred in April and August of 1990, before he was eighteen years old. Thus, the family court properly exercised jurisdiction.

■ However, the family court is a court of limited jurisdiction, *see State v. Kipi*, 72 Haw. 164, 170, 811 P.2d 815, 818 (1991), and as such derives its authority from the statutes that created it and cannot exercise power not specifically granted by statute. *See* 47 Am.Jur.2d *Juvenile Courts and Delinquent and Dependent Children* § 4 (1995) (regarding the limited jurisdiction of juvenile courts).

The authority of the family court is defined and limited by HRS § 571-1 (1993) in relevant part as follows:

This chapter creates within this State a system of family courts and it shall be a policy and purpose of said courts to promote the reconciliation of distressed juveniles with their families, foster the rehabilitation of juveniles in difficulty, render appropriate punishment to offenders, and reduce juvenile delinquency. The court shall conduct all proceedings to the end that no adjudication by the court of the status of any child under this chapter shall be deemed a conviction; no such adjudication shall impose any civil disability ordinarily resulting from conviction; no child shall be found guilty or be deemed a criminal by reason of such adjudication; no child shall be charged with crime or be convicted in any court except as otherwise provided in this chapter; and all children found responsible for offenses shall receive dispositions that provide incentive for reform or deterrence from further misconduct, or both[.]

With respect to persons the family court adjudicates under HRS § 571-11(1) as law violators, HRS § 571-48 (1993) grants the family court the following disposition authority:

**Decree, if informal adjustment or diversion to a private or community agency or program has not been effected.** When a minor is found by the court to come within section 571-11, the court shall so decree and in its decree shall make a finding of the facts upon which the court exercises its jurisdiction over the minor. Upon the decree the court, by order duly entered, shall proceed as follows:

(1) As to a child adjudicated under section 571-11(1):

(A) The court may place the child on probation:

(i) In the child's own home; or

(ii) In the custody of a suitable person or facility elsewhere, upon conditions determined by the court.

When conditions of probation include incarceration in a youth correctional facility, the incarceration shall be for a term not to exceed one year, after which time the person shall be allowed to reside in the community subject to additional conditions as may be imposed by the court;

(B) The court may vest legal custody of the child, after prior consultation with the agency or institution, in a [Hawai'i] youth correctional facility, in a local public agency or institution, or in any private institution or agency authorized by the court to care for children; or place the child in a private home. If legal custody of the child is vested in a private agency or institution in another state, the court shall select one that is approved by the family or juvenile court of the other state or by that state's department of social services or other appropriate department[.]

HRS § 571-48 does not authorize the family court to commit a person to an adult correctional facility. Neither does HRS § 352-9 (1993) or § 571-13 (1993). They state as follows:

**§ 352-9 Period committed.** (a) All persons committed to the [Hawai'i] youth correctional facilities shall be committed for the period of their minority or as otherwise ordered by the court.... In any case, no person nineteen years or older shall be incarcerated in a youth correctional facility.

(b) In those cases where the term of commitment extends beyond the person's nineteenth birthday, the person shall be placed on juvenile parole pursuant to the original family court order for the balance of the person's term of commitment; provided that such term does not extend beyond the person's twentieth birthday unless earlier terminated.[3]

(Footnote added.)

§ 571-13 **Retention of jurisdiction.** Except as otherwise provided in this chapter, jurisdiction obtained by the court in the case of a minor may be retained by it, for the purposes of this chapter, after the minor becomes eighteen years of age until the full term for which any order entered shall have expired. Further, in the case of any person who is alleged to have committed an offense under section 571-11 prior to reaching eighteen years of age, the court shall have jurisdiction after the person becomes eighteen for the purpose of holding hearings and/or entering orders of disposition concerning the alleged offenses. This section shall not be construed, however, to confer any jurisdiction upon the family court over a person for any criminal act committed after the person achieves eighteen years of age.

The State cites HRS § 352-28 (1993) as evidence that the family court is not precluded from sending a minor to an adult correctional facility. HRS § 352-28 is worded as follows:

**Transfer to correctional facility.** Any person after the person's sixteenth birthday, who has been committed to the care of the director and disrupts the order and the discipline of any state-operated youth correctional facility or injures the staff or other person committed to the facility or for other good cause, may be transferred by the director to an adult correctional facility with the approval of the family court for the balance of the term provided for by the court. If such person demonstrates sufficient improvement or progress, or for other good reason, the family court

may order the person's return to a youth correctional facility.

HRS § 352-28 expressly authorizes commitment to an adult correctional facility in the unique situation specified. Doe's situation is materially different. Moreover, the transfer contemplated by HRS § 352-28 is limited to "the balance of the term provided for by the court" and, as § 352-9 indicates, no term may "extend beyond the person's twentieth birthday."

The State cites HRS § 571-41(f) (1993) which states in relevant part as follows:

The judge, or the senior judge if there is more than one, may by order confer concurrent jurisdiction on a district court created under chapter 604 to hear and dispose of cases of violation of traffic laws or ordinances by children, provision to the contrary in section 571-11 or elsewhere notwithstanding. The exercise of jurisdiction over children by district courts shall, nevertheless, be considered noncriminal in procedure and result in the same manner as though the matter had been adjudicated and disposed of by a family court.

Based on HRS § 571-41(f), the Hawai'i Supreme Court concluded in *State v. Buckman*, 70 Haw. 328, 331, 770 P.2d 418, 420 (1989), that

[t]he noncriminal nature of family court proceedings accords with 'the philosophy and approach of this specialized court [which] is based upon the principle that the state has a responsibility to protect ... children[.]' Hse. Stand. Comm. Rep. No. 130, in 1965 House Journal, at 550. To allow the district court to impose a sentence of imprisonment upon a minor would be contrary to this philosophy and violative of HRS § 571-41(f).

█ The opinion in *Buckman* inescapably leads to the conclusion that the family court is not authorized to commit a person to an adult correctional facility except as authorized by HRS § 352-28.

The final reason for our decision is provided by HRS § 571-22 (1993) as follows:

---

3. It appears that, when a person age 19 violates his/her juvenile parole, the family court is not authorized to waive its jurisdiction over that person or to incarcerate that person in a youth correctional facility or an adult correctional facility.

**Waiver of jurisdiction; transfer to other courts.** (a) The court may waive jurisdiction and order a minor or adult held for criminal proceedings after full investigation and hearing where the person during the person's minority, but on or after the person's sixteenth birthday, is alleged to have committed an act which would constitute a felony if committed by an adult, and the court finds ... that the safety of the community requires that the person continue under judicial restraint for a period extending beyond the person's minority.

In other words, the legislature provided the family court with an alternative in the situation where the family court decides "that the safety of the community requires that the person continue under judicial restraint for a period extending beyond the person's minority." In such a case, HRS § 571–22 authorizes the family court to "waive jurisdiction and order [the] minor or adult held for criminal proceedings[.]"

 In the instant case, the family court denied the State's petition asking the family court to waive its jurisdiction. When the family court declined to waive its jurisdiction over Doe, it finally decided that the safety of the community did not require that Doe continue under judicial restraint for a period extending beyond Doe's minority and that no court could commit Doe to an adult correctional facility for the alleged act(s) in question. When the family court thereafter committed Doe to an adult correctional facility for the act(s) in question, it unlawfully violated its prior order declining to waive its jurisdiction over Doe.

## CONCLUSION

Accordingly, we vacate (1) the family court's May 11, 1994 Order Re Motion denying Doe's May 2, 1994 Motion for Reconsideration of Orders and (2) that part of the family court's April 13, 1994 Findings, Order and Decree that committed Doe to the care of the Executive Director of the Department of Public Safety for thirty days with credit of fourteen days for time served. We remand for reconsideration of the disposition part of this case in light of this opinion and Doe's age.