23824

The STATE, Respondent v. Stephen H. WILSON
and Walter Wilson, Jr., Appellants.

(429 S.E. (2d) 453)

Supreme Court

*Joseph L. Savitz, III, Asst. Appellate Defender*, Columbia, for appellant Stephen H. Wilson.

*Lesley M. Coggiola, Asst. Appellate Defender*, Columbia, for appellant Walter Wilson.

*Atty. Gen. T. Travis Medlock, Chief Deputy Attys. Gen. Donald J. Zelenka* and *Cameron M. Currie, Asst. Attys. Gen. Sean Kittrell* and *Tracy A. Meyers;* and *Sol. Richard A. Harpootlian,* Columbia, *for respondent.*

Heard June 1, 1992; Filed March 22, 1993.

Reh. Den. May 17, 1993.

MOORE, Justice:

Appellants[1] were convicted of trafficking in excess of 100 pounds of marijuana. We affirm.

## I. FACTS

This case involves several members of the Wilson family. Appellant Steve Wilson is appellant Walter Wilson's son. Other family members, including Walter's son and daughter-in-law, Ronnie and Teresa Wilson, were also participants in the crimes alleged.

In December 1989, family members were indicted by the Statewide grand jury for various drug crimes. Steve and Walter were indicted in count #1 along with Ronnie and Teresa for trafficking in more than 400 grams of cocaine since 1982. Count #2 of the indictment charged Ronnie and Teresa with trafficking in more than 100 pounds of marijuana with the Martinez brothers (Roberto and Ramon) since 1979. A trial was held in April 1990. Steve and Walter were acquitted of trafficking in cocaine.[2]

---

[1] We have consolidated appellants' separate appeals for disposition in this opinion.

[2] Ronnie and Teresa were found guilty of trafficking in cocaine and trafficking in marijuana. Steve was found guilty of possession of cocaine with intent to distribute pursuant to another count in the indictment.

In May 1990, both Steve and Walter were indicted for trafficking in more than 100 pounds of marijuana from 1985 to 1989 with Ronnie, Teresa, and the Martinez brothers. The trial judge denied motions by Steve and Walter to quash the 1990 indictment on double jeopardy grounds. Both were convicted and now appeal.

## II. ISSUE

Does the Double Jeopardy Clause bar the 1990 indictment for trafficking in marijuana?

## III. DISCUSSION

### A. *Grady v. Corbin* Analysis

Appellants first argue that under *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed. (2d) 548 (1990), their subsequent prosecution for trafficking in marijuana is barred by the Double Jeopardy Clause because the prosecution sought to prove conduct that constituted an offense for which they had already been tried and acquitted.

In *Grady v. Corbin*, the United States Supreme Court set forth the analysis used in determining whether a subsequent prosecution is barred by the Double Jeopardy Clause. A court must first apply the traditional *Blockburger*[3] test. If application of that test reveals the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease and the subsequent prosecution is barred. 495 S.C. at 516, 110 S.Ct. at 2090. If, however, a subsequent prosecution survives this technical comparison of the elements of the two offenses, the court must then determine whether the State will prove the entirety of the conduct previously prosecuted to establish an essential element of the offense in the subsequent prosecution. 495 U.S. at 523, 110 S.Ct. at 2094. If so, the subsequent prosecution is barred.[4] As more simply put in the recent case of *United States v. Felix*, — U.S. —, 112 S.Ct. 1377, 188 L.Ed. (2d) 25 (1992), the *Grady v. Corbin* analysis relies on a deter-

---

[3] 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

[4] Conversely, if in the first prosecution the State proved conduct comprising all of the elements of another offense not yet prosecuted, the Double Jeopardy Clause would bar the subsequent prosecution of that lesser offense. 495 U.S. at 521, n. 11, 110 S.Ct. at 2093, n. 11.

mination whether one offense is "a species of lesser-included offense" of the other.

Applying this analysis to the case at hand, we find no double jeopardy violation. First, application of the *Blockburger* test results in no bar to appellants' subsequent prosecution for trafficking in marijuana since neither of the statutory offenses charged (trafficking in cocaine and trafficking in marijuana) is a lesser included offense of the other. *Compare* S.C. Code Ann. § 44-53-370(e)(1)(b) (trafficking in marijuana) *with* § 44-53-370(e)(2)(3) (trafficking in cocaine).

Further, neither offense is a "species of lesser-included offense" whose prosecution would be barred under *Grady v. Corbin*. Appellants were first prosecuted for trafficking in more than 400 grams of cocaine by conspiring with others to accomplish its sale and delivery or by possessing that amount, either of which is a violation of § 44-53-370(e)(2)(e). After their acquittal on these charges, appellants were subsequently indicted for trafficking in more than 100 pounds of marijuana by conspiring with others to sell and deliver it or by aiding and abetting the sale and delivery, either of which is a violation of § 44-53-370(e)(1)(b). The *entirety* of the conduct sought to be proved in the first case, *i.e.*, trafficking in cocaine, does not establish any *single* element of the offense prosecuted in the subsequent case, trafficking in marijuana. There is no species of lesser-included offense involved here.

Nor did the prosecution seek to prove the same conduct in both cases since a different controlled substance was the subject of the prosecution in each case. Even the element of "conspiracy" common to both prosecutions was proved by different conduct.

The marijuana conspiracy was proved by evidence of a long-term arrangement with the Martinez brothers to supply the Wilsons with approximately 100 pounds of marijuana twice a month. At the start of the relationship between the Wilsons and the Martinezes, Ronnie and Steve traveled to San Antonio, Texas, to purchase marijuana from Roberto and Ramon Martinez. Walter Wilson was the driver on at least two of these trips. Eventually, the Martinez brothers began delivering the marijuana to the Wilsons in South Carolina for an increased price per pound. Walter sometimes paid for the deliveries when they arrived. Only the conduct regarding the on-

going marijuana deals with the Martinez brothers was proved to establish a conspiracy to traffic in marijuana.

The State sought to prove different conduct to establish the cocaine conspiracy. Steve once purchased an ounce of cocaine worth $2,000 from a man named Dickie Hunt in McCormick, South Carolina. Steve sold cocaine to different buyers in amounts ranging from $1/8$ ounce to one ounce. Walter delivered cocaine to at least one buyer from his residence in Saluda, South Carolina, and also accepted payment for cocaine. The only evidence of a cocaine sale in relation to the Martinez connection is one occasion during a marijuana deal when Roberto asked Steve if he "had any extra" and Steve sold him $150 worth of cocaine. This exchange was clearly not an integral part of the arrangement for biweekly marijuana shipments which continued for years from the Martinezes to the Wilsons.

Appellants make much of the prosecutor's remark at the first trial that there was "a main conspiracy" to distribute both cocaine and marijuana. This comment is taken out of context. It was made during the argument to the trial judge to admit the marijuana-related evidence in appellants' trial for cocaine trafficking only to show motive or intent as permitted under *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). It is clear from the State's case that it sought to prove a distinct course of conduct involving the Martinez brothers to establish the marijuana conspiracy. In fact, the record indicates the trial judge explicitly charged the jury at appellants' trial for cocaine trafficking that the cocaine conspiracy was "a single conspiracy" as opposed to the marijuana conspiracy involving the Martinez brothers.

In conclusion, we find no double jeopardy violation under *Grady v. Corbin*.

### B. *State v. Dasher* Analysis

Appellants contend the indictment for trafficking in marijuana should have been quashed under *State v. Dasher*, 278 S.C. 454, 298 S.E. (2d) 215 (1982). In *Dasher*, the defendants were charged in two separate indictments with "conspiring to distribute controlled substances." At the trial on the first indictment, the State introduced evidence of conduct involving cocaine dealing. At a subsequent trial on the second indictment, the State sought to prove substantially the same conduct involving marijuana. Although *Grady v. Corbin* had not

yet been decided, this Court, noting that the gravamen of the crime of conspiracy is an agreement, found a double jeopardy violation since the conduct proved in both cases established an agreement to import drugs for distribution in Lexington County.

The case before us today, however, is distinguishable. As discussed above, the State sought to prove a distinct course of conduct concerning the marijuana conspiracy and different conduct concerning the cocaine conspiracy. The first prosecution was for a violation of § 44-53-370(e)(2)(e) (conspiring to traffic in cocaine); the subsequent prosecution was for a violation of § 44-53-370(e)(1)(b) (conspiring to traffic in marijuana). This is unlike the situation in *Dasher* where the defendants were charged in both prosecutions with a general conspiracy to violate the Controlled Substances Act. Here, conspiring to traffic in cocaine and conspiring to traffic in marijuana are themselves two separate substantive offenses under subsection (e) of § 44-53-370.[5] Thus, the agreement alone is not the gravamen of the offenses in question. Each conspiracy offense is statutorily defined by what controlled substance is the object of the agreement. The State therefore has alleged two separate conspiracies requiring different proof.

We find *Dasher* is distinguishable from the case at hand and conclude appellants' argument is without merit.

### C. *Ashe v. Swenson* Analysis

Finally, appellants contend the Double Jeopardy Clause bars the indictment for trafficking in marijuana under *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed. (2d) 469 (1970). In that case, the United States Supreme Court applied a collateral estoppel analysis to find a double jeopardy bar to a subsequent prosecution. The defendant was tried and acquitted of robbing one of the six victims robbed at a poker game. He was subsequently charged with robbing another victim of the same robbery. The Court held that when "an issue of ulti-

---

[5] Section 44-53-370(E) provides:

(e) Any person who knowingly ... *conspires* to sell, manufacture, deliver, or bring into this state ...
(1) Ten pounds of marijuana is guilty of a felony which is known as "trafficking in marijuana" ...
(2) Ten grams or more of cocaine ... is guilty of a felony which is known as "trafficking in cocaine" ...

mate fact" had been determined in a criminal proceeding, that issue cannot be relitigated. 397 U.S. at 443, 90 S.Ct. at 1194. In determining whether a subsequent prosecution is barred, a court must consider "whether a rational jury [in the first proceeding] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* The record in *Ashe v. Swenson* indicated the issue upon which the first acquittal was based was identification and therefore the State could not relitigate the issue of the defendant's identification as the perpetrator.

■ Again, we find this case distinguishable. As previously discussed, here the State sought to prove two distinct courses of conduct to establish two separate offenses. No issue regarding appellants' involvement in the marijuana conspiracy was litigated at the first trial. Evidence of their involvement with marijuana was admitted only for the limited purpose of showing intent or motive regarding the cocaine conspiracy with which appellants were charged. The limited admission of evidence of criminal conduct does not bar its admission in a subsequent proceeding on the ground of double jeopardy. *United States v. Felix, supra.*

We conclude collateral estoppel does not bar the subsequent prosecution in this case.

## CONCLUSION

We find no double jeopardy violation in this case and affirm appellants' convictions.

Affirmed.

HARWELL, C.J., and CHANDLER, J., concur.

FINNEY, J., dissents in separate opinion.

TOAL, J., concurs in separate opinion.

TOAL, Justice, concurring:

I concur in result with the majority opinion. I agree with the majority finding that there were two separate conspiracies, one to traffic cocaine and another to traffic marijuana. I write separately to clarify that, in my view, if there had been one single conspiracy, a subsequent prosecution after an acquittal would violate the principles of former jeopardy as espoused by this Court in *State v. Dasher*, 278 S.C. 454, 298 S.E.

(2d) 215 (1982), and the United States Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed. (2d) 548 (1990).

The Double Jeopardy Clauses of both the United States and South Carolina Constitutions protect against multiple punishments for the same offense and second prosecutions for the same offense after an acquittal, a conviction, or an improvidently granted mistrial. *Corbin, supra; Matthews v. State*, 300 S.C. 238, 387 S.E. (2d) 258 (1990); *Dasher, supra.* When there are multiple punishments imposed in the same trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed. (2d) 535 (1983). In this context, the established test for determining whether two offenses are the same was set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. The *Blockburger* test is one of statutory interpretation which focuses on the formal elements of the crimes finding them to be different offenses if each requires proof of a fact which the other does not. *State v. Magazine*, 302 S.C. 55, 393 S.E. (2d) 385 (1990). Thus, one conspiracy may be the subject of more than one conspiracy statute each requiring different criminal objects; and therefore, differing elements of proof. This was the situation in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed. (2d) 275 (1981). In *Albernaz*, the single conspiracy involved both the importation and distribution of marijuana. The defendants were convicted in a single trial of violating two separate conspiracy statutes, one which prohibited conspiring to import marijuana and one which prohibited conspiring to distribute marijuana. Applying the *Blockbuster* test to the two statutes and finding it clearly satisfied, the United States Supreme Court held the multiple punishment was not in violation of the Double Jeopardy Clause. *Id.* at 344, 101 S.Ct. at 1145, 67 L.Ed. (2d) at 285.

In the case at bar, however, the Double Jeopardy violation

alleged is not one of multiple punishments but of successive prosecutions for the same offense. When successive prosecutions are brought, additional concerns are raised.

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. . . .

*Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed. (2d) 199, 204 (1957). Additionally, multiple prosecutions give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction. *Corbin, supra.* The technical comparison of the elements of the two offenses does not protect defendants sufficiently from the burden of multiple trials. *Id.* 495 U.S. at 520, 110 S.Ct. at 2093, 109 L.Ed. (2d) at 564. Therefore, the analysis, when former jeopardy is alleged, includes a determination of the legislative intent under *Blockburger,* but additionally, "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 521, 110 S.Ct. at 2093, 109 L.Ed. (2d) at 564. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. *Id.* Hence, under some circumstances, multiple punishments imposed in the same trial may be proper but a subsequent prosecution would be barred. *State v. Carter,* 291 S.C. 385, 353 S.E. (2d) 875 (1987).

Conspiracy is a unique anticipatory offense. Conspiracy is defined as "a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object or an object neither criminal nor unlawful by criminal or unlawful means." S.C. Code Ann. § 16-17-410 (1985). The gravamen of a conspiracy is the agreement. *United States v. Felix,* — U.S. —, 112 S.Ct. 1377, 118 L.Ed. (2d) 25 (1992) (quoting *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947)); *Dasher, supra.* Under South Carolina law, the crime of con-

spiracy is complete when the agreement is reached. No overt act in furtherance of the conspiracy need be proven. *State v. Ferguson,* 221 S.C. 300, 70 S.E. (2d) 355, *cert. denied,* 344 U.S. 830, 73 S.Ct. 35, 97 L.Ed. 646 (1952). It is a completely separate offense from the substantive offenses which are the objects of the conspiracy. *Felix, supra; State v. Greuling,* 257 S.C. 515, 186 S.E. (2d) 706 (1972). Thus, the conduct to be proven is the agreement. Accordingly, in *Dasher,* we held "in conspiracy cases the plea of former jeopardy will prevail where it can be shown that the subsequent prosecution rests solely upon the same agreement that was involved in the former prosecution, and that, where such identity of the agreement is established, the same conspiracy is involved, no matter how variegated the criminal purposes contemplated in the agreement." *Dasher* 278 S.C. at 456, 298 S.E. (2d) at 217 (quoting Annotation, *Several Conspiracies as Predicable Upon Single Agreement to Commit Several Offenses,* 87 L.Ed. 29, 47 (1938).

Under the majority's analysis, two people could orally agree to import both cocaine and marijuana and take no further action. With the evidence of this oral agreement, the two could be prosecuted for conspiring to import cocaine. After their conviction or acquittal, they could be tried again based on the same evidence and agreement for conspiring to import marijuana. This is contrary to the basic principles of protection from former jeopardy. *Dasher, supra.* In the second trial, the State could and undoubtedly would hone its trial strategies and perfect its evidence thereby increasing the possibility of conviction. *Corbin* 495 U.S. at 518, 110 S.Ct. at 2092, 109 L.Ed. (2d) at 562.

The analysis of this issue in this case is needlessly complicated by the way in which the State presented its case in the first *Wilson* trial in which Walter and Stephen were acquitted of trafficking cocaine. The State presented evidence of both conspiracies at the first trial arguing it was one grand conspiracy. The trial court allowed the evidence in but charged the jury its use was limited to showing motive or intent. The admission of evidence of this separate marijuana conspiracy under *Lyle, supra* in a trial in which Walter and Stephen were not charged for their involvement in the marijuana conspiracy is not before the Court at this time.

Generally, the actual oral or written agreement is not the

evidence used to prosecute a conspiracy. In fact, no formal or express agreement need be established. *State v. Fleming,* 243 S.C. 265 133 S.E. (2d) 800 (1963). A tacit, mutual understanding, resulting in the willful and intentional adoption of a common design by two or more persons to do an unlawful act is sufficient. *Id.* Although a conspiracy may be complete without proof of overt acts, overt acts can be used to prove the existence and object of the conspiracy. *Id.* This use of this circumstantial evidence presents the possibility of the State using different acts to prove a single agreement as a conspiracy may continue for an extended period. *United States v. Ragins,* 840 F. (2d) 1184 (4th Cir. 1988). However, the "State cannot avoid the dictates of the Double Jeopardy Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct." *Corbin,* 495 U.S. at 522, 110 S.Ct. at 2093, 109 L.Ed. (2d) at 565. Therefore, a "totality of the circumstances" test is used to determine whether two successive conspiracy counts charge the same conspiracy and thus the same offense within the meaning of Double Jeopardy. *Ragins, supra.* The factors considered are the time periods covered by the alleged conspiracies, the overlap of persons alleged to be co-conspirators, the places where the alleged conspiracies occurred, the substantive offenses alleged, and the overt acts alleged committed in the furtherance of the conspiracies. *Id.* This totality of circumstances test was applied by this court in *Dasher,* 278 S.C. at 456, 298 S.E. (2d) at 217.

To allow the State, after bringing one action alleging a conspiracy which results in an acquittal, to bring an action based on the same agreement or conspiracy by merely alleging an additional objective or additional overt acts as evidence of the agreement is completely contrary to the fundamental essence embodied in the Double Jeopardy Clause of both the United States and South Carolina Constitutions. The defendant has already defended himself successfully against allegations of his involvement in the agreement. Accordingly, if one conspiracy had been established, subsequent prosecution would be barred.

FINNEY, Justice (dissenting):

I respectfully dissent. Under the majority opinion, there were two conspiracies in this case. The concurring opinion holds that there were two conspiracies, but if there was one

double jeopardy would apply. In my opinion, *State v. Dasher* is indistinguishable, and there was but one conspiracy in this case.

*Dasher* states that:

> The question is what is the nature of the agreement. If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among all the parties constitutes a single conspiracy. *Id.* 298 S.E. (2d) *at* 217, quoting 16 Am. Jur. (2d) § 11 (1979).

The more persuasive evidence in this case is that the many acts which constituted the conspiracy were but parts of a grand scheme to import, sell and distribute marijuana and cocaine. In the present case, just as in *Dasher*, the dates of the conspiracies overlapped and the key principles were substantially the same. *Dasher* stands for the proposition that where there is one grand conspiracy of substantial duration to sell, transport and distribute marijuana and cocaine, double jeopardy arises where any subsequent prosecution rests solely upon the same agreement.

The majority also attempts to distinguish the present case by indicating that in *Dasher*, the defendants were charged in two separate indictments with "conspiring to distribute controlled substances," but assert that here conspiring to traffic in cocaine and conspiring to traffic in marijuana are two separate substantive offenses under subsection (e) of § 44-53-370. I find this distinction to be extremely tenuous.

Although appellants were charged with conspiracy pursuant to § 44-53-370(e)(2)(e) and § 44-53-370(e)(1)(b), the basic elements of conspiracy in this State have not been altered. Under the majority's analysis, the mere fact that the conspiracy is two separate substantive offenses under the Controlled Substances Act somehow transforms the nature of the agreement into separate agreements. Two separate conspiracies do not arise simply because the State alleges two separate conspiracies. Moreover, since this decision allows for the framing of the indictment to determine whether there is one conspiracy or two, the State could easily manipulate the indictment to extract the maximum punishment, without regard to the actual crime.

The Double Jeopardy Clause provides against being subjected to successive prosecutions for the same offense, without regard to the actual imposition of punishment. *United States v. Ragins*, 840 F. (2d) 1184 (4th Cir. 1988).

Finding no legitimate distinction between the present case and *Dasher*, I would find that the 1990 indictment for trafficking in marijuana constitutes double jeopardy, requiring reversal of these subsequent convictions.